With that, we can turn to the first case scheduled for argument. That's 20-34-69, United States v. Guerrier. I'm not sure how to pronounce Mr. Guerrier's name. Maybe you can correct me. Ms. Bennett. Good morning, Your Honors. I wish I could correct you. I was not trial counsel. I still struggle with it when I speak with my client. Good morning. May it please the Court. I'm Megan Bennett, and I represent Defendant Appellant Edwin Guerrier. We have two main issues on appeal. One has to do with whether the District Court improperly failed to address the various health-related arguments that were presented at sentencing concerning Mr. Guerrier's comorbidities with respect to the COVID-19 crisis. And the second has to do with the forfeiture order. I'd like to just briefly address the sentencing and the health conditions and then move on to the forfeiture order, unless the Court has questions on the first point. And I will be brief on that. Mr. Guerrier's defense counsel presented substantial information about his serious health conditions, his obesity, his use of a CPAP machine for sleeping, etc. I have a question and a problem with that. His health conditions were relevant to COVID, but the minimum sentence was 10 years. So, you know, COVID is relevant now and maybe for the next few years, but why is that relevant to a difference between 10 years, 12 years, or more? I understand the question and my response would be that even though it wouldn't, as it might in a motion for early release, justify getting released from custody, what it does is it demonstrates that the period of time that the person will be incarcerated is a degree more punitive than it would be were he not suffering from those comorbidities. So not only is he at higher risk of contracting the disease while he's incarcerated, but should he receive it or should he develop it, he will. Because he is at a higher risk and higher likelihood in a congregate setting, that the risk both presents mental health issues, as well as very serious physical health issues, and that those constitute a sort of heightened punitive factor over the period of those 10 years. So that a sentence of 120 months could functionally be the equivalent of a sentence of 156 months if he did not have those conditions. Thank you. Moving on to the forfeiture issue, we have three main arguments with respect to the forfeiture. First, we argue that it was not adequately supported by the factual record. The district court judge here relied primarily on testimony from a trial in which Mr. Garrier was not a party. He had pleaded guilty shortly before the trial of his co-defendant. While the district court judge, in the context of the co-defendant's sentencing, noted that the primary government witness, Mr. Fabian, was quote unquote basically credible. But is it error to take into account evidence from another trial? Or is that something that can be looked at? Well, I think it would depend on the circumstances, Judge Calabresi. And here, where there was a single testifying witness, it was not as though the trial of the co-defendant was replete with testimony about the quantity and value of the drugs that were issued. The only testimony was from a single cooperating co-defendant who was the person who connected Mr. Garrier with the suppliers of the drugs. And the district court found that certain aspects of the cooperator's testimony were stronger than other aspects of his testimony. I would say that in this case, that wasn't an adequate factual basis. Your argument is more that this was not adequate evidence, not the fact that it came in from the other trial. That's correct. Thank you. And the quantity, the minimum of 15 kilograms was not disputed. The question is the valuation. Is that correct? He admitted to the 15 kilograms in the context of his concessions to the pre-sentence investigation report as being an amount that was at issue in the conspiracy. So, Judge Carney, I'd say there are two questions. One, yes, certainly the value is contested, but also whether he could be held jointly and severally responsible for the full 15 kilograms under Honeycutt would also be contested. But Honeycutt really involved a very different situation where one of the brothers didn't ever have control of the proceeds of the crime, whereas here there was shared control. The facts suggested that Mr. Garrier and Fabian and the third individual all were involved in running this drug conspiracy. And there was really never a suggestion that Mr. Garrier himself was not at the hub. I don't understand how Honeycutt pertains here. It seems to me your argument on valuation is more persuasive. I would rely more on my argument on valuation. And again, the valuation issue, and I think it sort of dovetails with the evidentiary argument. The valuation issue was premised solely on the testimony of Mr. Fabian, who said at one point during the course of the trial where he was cooperating witness that the value range, sometimes it was 32,000, sometimes it was 33,000. But didn't provide any, and I understand it's a preponderance evidence that we're talking about here, but still didn't provide any meaningful testimony that tied each transaction to a particular amount. And we also have presented the argument, which I understand is perhaps more of a reach, that here where Mr. Garrier was transient, he was the person who was distributing the drugs to the lower level dealers. And whether he should be held responsible entirely for the full $450,000 that the government calculated, as opposed to what his proceeds were, I think is another problem. But again, we're talking about not profit, but the amount of contraband that he was charged with distributing. And that was, he had as much control over the two other individuals as anyone else. So to my mind, Honeycutt is an apposite. And the question is, what was the reasonable valuation? Of course, we apply just a preponderance standard and a lesser, you know, requires scientific precision. And there was no, as I understand it, no contemporaneous kind of objection to the notion that he had made at least $3,000 per kilo as proceeds, which would be in proportion then to what the value of the drug was. Isn't that right? Well, he didn't have an opportunity. In terms of the valuation, that testimony was elicited during Mr. Ferrer's trial. So there was no opportunity for him to object to that. In the PSR, the government cites the two paragraphs in the PSR to note that he admitted to the forfeiture allegations. But if you look at paragraph 6J, which is at page 4 of the confidential appendix, that simply refers back to his plea agreement in which at the time of this plea, and that appears at page 821 of the appendix, he simply acknowledged that there would be forfeiture. And in fact, if you look at page 821 of the appendix, what he says is that what the district court judge says to him is, I'm sorry, 821 is the indictment. The plea allocation is at page, relevant section is at page 839, and the district court judge says to him, if you have any money or property that was derived from your illegal sale of those drugs, the government would have a right to capture that money or property from you. And you're agreeing to that as part of your plea, but the dollar amount isn't presented until the eve of trial and there's, sorry, the eve of sentencing, and he's not, there's no meaningful opportunity to at the sentencing. At sentencing, so the government says, just as an example, Mr. Garrier was demonstrated at trial, and as it describes it in the government sentencing submission, was making approximately $3,000 a kilogram after he broke down the kilos, and that neither Fabian nor Ferrer were making anything like $3,000 a kilogram. And I don't see any kind of objection to that assertion or any pushback on that or to the sentencing, in the sentencing memorandum. Did I miss something? You did not, Your Honor, and I think that's where that argument would fall into the plain error territory. All right. Thank you very much. I think we have the argument. You've reserved a couple, three minutes of rebuttal. We'll hear from the government. Mr. Raymond. Good morning, Your Honors. May it please the court. Assistant United States Attorney Samuel Raymond for the government, representing the government on this appeal, and I also represented the government below. Your Honors, the court should affirm the district court's decision judgment here, both in terms of the term of incarceration and with respect to the forfeiture order. With respect first to the period of incarceration, as the court knows, it's a it's a plain error standard here. The objection that is raised now was not raised before the district court. The issue of Mr. Guerrero's medical condition and his interaction, the interplay with COVID was presented fairly before the district court. This court's long line of precedence state that the district court is not required to address every argument in support or not required to orally address every argument in order to fashion an appropriate sentence or to implement an appropriate sentence. There's a strong presumption in a case, in any case, but particularly a case like this, that the court reviewed carefully all of the arguments raised by defense counsel below. Could you turn to the forfeiture order $450,000 man is making no money is going to be incarcerated for an extended period. And, and the government relied primarily on testimony from another trial that he didn't have. Mr. Gary I didn't have a direct opportunity to protest what what makes that legitimate basis for a forfeiture order of this magnitude. Yes, Your Honor. So, first of all, this court's decision in case hold specifically that a sentencing court is entitled to rely on information which it knows, even information gleaned from a trial in which the person to be sentenced was not a defendant or represented by counsel. Mr. Gary I have an opportunity to contest that basis for evaluation for the cocaine. Yes, Your Honor. That was the transcript of Mr. Fabian's testimony which includes, as my respected opposing counsel mentioned, includes his testimony that the amount of money that they were selling the cocaine for range from $31,500 to $33,000. That was appended to the government sentencing submission below. So, had a defense counsel objected to that calculation they could have at the time of sentencing in their sentencing submission, and before the district court. Is this a question of whether we review it for error or plain error, or is the question here of whether there was an opportunity on the part of the defendant to counter. Two things are rather different but they're related in a way to what was going on. Yes, Your Honor, I think that's, I think they are linked. The plain error standard applies, because defense counsel did not object below. They did have, I think as the primary point, they did have the opportunity of defense counsel. The more important question is whether there was an opportunity to counter the question of objection or not, is one that, especially on sentencing issues were very muddled about. But, yeah, good. Thank you. So, yes, I do think there was an opportunity this was appended to the government sentencing submission, Mr Fabian's testimony was, and specifically on this point, $31,500 to $33,000 that was appended to the government sentencing submission. So, and as Judge Carney, as you mentioned, there was also specific reference to Mr Guerrero's profits. By definition, if he's profiting, and especially in a case like this where he is the primary person receiving the cocaine and paying out for the cocaine. The actual proceeds he made by definition must have been much larger than the $3,000 that he was actually profiting. I think, as the court mentioned under 21 USC 853 the standard here is proceeds not profits as this court held in, for example, con. I saw it at the sentencing there was discussion about whether this was a fine or whether it was actually forfeiture. And it was agreed on that be forfeiture but that it might raise constitutional questions were $450,000 money judgment to be imposed and payment terms to be demanded forthwith after the defendant was released, would you agree that in certain circumstances. Other than these, maybe where the payment schedule was called for appropriating, you know, all of the defendants take home pay once released that that might be an unconstitutional excessive fine. Your Honor, I think we would start with the meaning of a money judgment that the money judgment here is a quantification of the assets, which are subject to forfeiture, which the government can collect either directly or as substitute assets. So, while perhaps there are, there would be a case if the court were to require or mandate an immediate payment, perhaps that could raise constitutional. I have, I have some problems. If this were a situation, we're entirely at the government's discretion, they could go after him for the whole amount. I think your better argument is that Judge Rakoff limited the amount that they could, but, but, you know, I have less faith in in just saying well it's okay because the government might be nice. I don't think that's what we do. We have rules. But anyway, I'm not sure if it hits in this case because Judge Rakoff did put that 15%. Yes, Your Honor, I mean, I think that, as I'm not sure that Judge Rakoff's determination was necessary under the forfeiture laws and under the forfeiture statutes, but regardless. Here, his decision is quite clear on the language that I think there was potentially a misinterpretation by the defense counsel in the reply brief, with respect to that there was a requirement that he pay 15% of his income that that's not what Judge Rakoff actually held. And Judge Rakoff was clear that the government, if authorized by law, the government may seek forfeiture of the defendant's assets. Your Honor, I'm happy to answer any other questions you may have about. Yeah, could you talk a little bit about the argument that the record here doesn't actually support the assertion that defendant obtain the contraband or the proceeds that the evidence about the cocaine itself, other people were passing it one to another and he was off to the side. Yes, Your Honor, I think that that. I think that what the testimony in Mr for rare so the defendants codependent, the testimony makes clear that it was Mr career up in Newburgh, who was receiving all of these drugs that the testifying cooperating witness Mr Fabian, and Mr for rare worked to bring the drugs directly to Mr career. They had worked. Mr Fabian testified that even before Mr for rare was out of incarceration which was in late 2017. He had worked with others to ferry large quantities of cocaine to Mr career himself not not that he was off to the side that he was the person who was the recipient of the drugs to Mr. Gary Gary a, or you're saying go rare and for rare. Yes, Your Honor. There was absolutely confusion about this topic below, but my understanding from from having been on the case from the beginning, it's go rare is the name of the defendant here rare Okay, thank you. Yes, but you were saying you. So if you could just repeat what you said, because I want to make sure we've differentiated between what Mr career received and what Mr fair rare received. Yes, Robinson's question. Yeah. So, down in the Bronx, Mr Fabian and Mr for rare arranged to obtain cocaine, which they then brought to Mr career up in Newburgh. Mr Fabian testified that he had been doing so with others for years before Mr for rare was released from incarceration in late 2017, and that it had been about once a month. They've been bringing multiple kill or kilogram or multiple kilo loads. Once a month for years before the fall of 2017 or late 2017. You know, even back of the back of the napkin accounting would say that's in the 10 or more kilograms. And then Mr Fabian's testimony was that while working with Mr for rare in fall in late 2017, up until the date of arrest in March 22 2018. They were bringing multi kilo loads of cocaine, up to Newburgh to Mr career every month, or what about even more frequently than that once a month. And those were three or four kilograms. And I'd also finally note, at the time of arrest. The FBI search, Mr. of the of the contraband. And he has in his acknowledgement of the amount that he acknowledged receipt of or possession of 15 kilograms or more. Is that correct. I believe so, Your Honor, I think, yes, that he did not dispute certainly that there were 15 kilograms 15 to 50 kilograms of cocaine, as part of the conspiracy. Judge Robinson. Well, I just, I was thinking about that last tagline as part of the conspiracy, which is a slightly different concept I think from, because then you get into your honeycutt problem. And so, Your Honor, I have to refer back to the pre allocution and what was in the sentencing, I think. I'm not sure what Mr. himself actually allocated to at the plea or at sentencing whether he allocated to accepting all 15. I do think regardless of what he allocated to the evidence is quite, and so it might be that all Mr. did not oppose was that they were 15 to 50 as part of the conspiracy. The evidence, I think is nonetheless clear and was clear to judge rake off that it was Mr. receiving those 15 to 50 kilograms of cocaine. All right, thank you very much. Thank you. We will hear rebuttal, Miss Bennett. I'm frightened you're on mute. You're on mute. Sorry, sorry. To judge Robinson's question, page 835 of the appendix, Mr. Gary are rare allocated only to distribute to agreeing to distribute five kilograms so even within the scope of the conspiracy, his agree his allocation was only with respect to five kilograms, it's in the, you dispute you just put the government's account of the evidence that was submitted about how much he in fact received over the those years. Well, I don't dispute the fact of Mr Fabian's testimony at the fair trial. Yeah, I've read through that and I, I do, I don't dispute that that's what Mr for rare said like I like I said, Judge rake off. Right, you said he was a basically credible witness but believe some testimony was stronger than other testimony and in this case, if we're, if we're out of honey cut territory we have to look at what Mr. was personally responsible for. If we're looking at this as a conspiracy then we're back in honey cut territory, I would, I would turn back to some of the Second Circuit language and other cases not not honey cut cases about what is what, what, what is, what is the purpose of the criminal forfeiture here, and in a case with judge greasy wrote and, you know, United States against a wide. There's a statement that mandatory forfeiture is concerned not with how much an individual has, but with how much he received in connection with the commission of the crime. And then in much to a more recent case of post honey cut case, the court says that the district court must determine the amount of money that I'm sorry that the, the, the consideration is the illicit gains based on the circumstances of the case question really is your point of view, whether there is enough evidence of the standard of finding that there was this or not, that's really you're going to a question of the amount of evidence that there was and whether it was sufficient. Yes, exactly. I'd say for example the point on the $3,000 that the government raised if you look at page a 17 and a 197 of the appendix that $3,000 figure is mentioned both of those places, but the $3,000 figure is not mentioned in Mr. Fabian's testimony that supported the government's request for the $450,000 forfeiture order. This is a, this is obviously a large forfeiture order, the government said that the testimony was that Mr. was response was receiving all of these drugs but that that's I think that's a slight misstatement because we know that there were times that miss sweat and another co conspirator was receiving those drugs. When you're looking at a forfeiture order that is this substantial, and that is this onerous. I think it's important that I think that there is a heightened concern to make sure that it is doesn't have again it nearly has to be by a preponderance of the evidence and the court can look at that evidence outside this particular record, but it has to be, it has to be sufficient and it has to be waiting enough to support a forfeiture order that's the size and we would ask that go ahead. I'm just looking at the government sentencing memo and it's detailing of the three kilograms between 2014 late 2015 16 kilograms that he received in 2017 and so on and I'm wondering whether that was then disputed in the defense sentencing memorandum whether those quantities were disputed and the basis for that calculation. Yeah, that's it. That's a good question and defense counsel below, with respect to forfeiture was focused primarily on the excessive fine argument. So, the amounts were not disputed them. The, the, I'm, I don't want to overstate myself it will be in the appendix but I do not believe that the, when you say the amounts do you mean the, the dollar, the $450,000 quantities, quantities were not were not addressed and that's why again, and, and then the, and then there's amount from faith and for air for as cheap as $32,000 a kilo that's on a 117 right so defense counsel sentencing was silent on those your honor so that that's why we're playing our argument. All right. Thank you very much. Thank you for your arguments will reserve decision. Thank you judges. Thank you.